IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMPIRE FIRE AND MARINE
INSURANCE COMPANY, as subrogee of
JAMES AND CHARLENE
DAUTENHAHN

and

STATE FARM FIRE AND CASUALTY
COMPANY, as subrogee of VICTOR AND
DEBRA TRUNZO

Plaintiffs,

v.

ROYAL PLUS ELECTRIC, INC.,

Defendant.

Civil Action No.: 13-332-RGA

MEMORANDUM ORDER

Before the Court are competing *Daubert* Motions; two submitted by Plaintiffs and one submitted by Defendant. Plaintiffs' first Motion seeks to bar the testimony of Defendant's expert Mark Kilgore. (D.I. 77). Plaintiffs' second Motion seeks to limit the testimony of Defendant's expert Gregory Paulsen. (D.I. 78). Defendant's sole Motion seeks to limit the testimony of Plaintiffs' expert Samuel Sudler. For the reasons stated below, Plaintiffs' Motion in Limine to Bar or Limit the Expert Testimony of Gregory J. Paulsen is **GRANTED**, Plaintiffs' Motion in Limine to Bar the Testimony of Defendant's Expert Mark L. Kilgore is **DENIED**, and Defendant's Motion in Limine to Limit the Testimony of Plaintiffs' Liability Expert Samuel Sudler is **DENIED**.

.

## I. BACKGROUND

All three Motions submitted by the parties stem from differing expert opinions based on the same set of relatively undisputed facts. A brief review of those facts is appropriate. On April 20, 2012, a fire broke out at the home of Plaintiff Empire's insured (the "Dautenhahn Home"). (D.I. 77, p. 1). Despite the suppression efforts of the local fire department, the Dautenhahn Home was razed and the neighboring residence, insured by Plaintiff State Farm, was damaged. (*Id.* at p. 2). Plaintiffs allege that the fire was caused by the improper workmanship of Defendant Royal Plus, who performed the electrical installation at the time of the home's construction. (*Id.*). The parties agree that the fire began in the area of an electrical junction box located on an outside wall of the Dautenhahn Home, but disagree on the causation of the fire. (D.I. 82, p. 1; D.I. 77, p. 6). Investigations performed after the fire revealed several cigarette butts in the debris towards the front of the house and beside the front garage, but no cigarette butts were ever found near the undisputed origin of the fire. (D.I. 78-1, p. 5). Plaintiffs, relying on Samuel Sudler, allege that the fire was caused by a high-resistance "glowing connection" within the electrical junction box which resulted from Defendant's failure to exercise reasonable skill and care during the initial installation of a wire connection. (D.I. 78, p. 2). Defendant rebuts Plaintiffs' claims with the aid of Mark Kilgore and Gregory Paulsen, who opine on alternative potential causes of a glowing connection within the electrical junction box. (D.I. 81-2, pp. 7-8).

## II. LEGAL STANDARD

The motions presented are *Daubert* motions. Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or

2

data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court of Appeals has explained:

Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good ground' for his or her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability, and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003).[1]

### III. DISCUSSION

Plaintiffs first argue that Mr. Paulsen's testimony should be limited as it pertains to careless smoking as a cause of the fire because it fails to meet the requirements set forth by Rule 702 and *Daubert*. Plaintiffs also argue that Mr. Kilgore's testimony should be limited because it similarly fails to pass muster or, in the alternative, because Mr. Kilgore is not qualified to render an opinion in this case. Defendant seeks the limit Mr. Sudler's conclusions regarding his opinions on causation as unsupported speculation. I will briefly address the Parties' arguments in turn.

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the recent amendments to it were not intended to make any substantive changes.

3

### A. Plaintiffs' Motion to Limit Mr. Paulsen's Testimony

Plaintiffs argue that Mr. Paulsen should not be permitted "to testify, as an expert, that careless smoking cannot be ruled out as a cause of the fire" because his opinion is speculative and not based on methods and procedures of science.[2] (D.I. 78, p. 3). Rule 702 requires that expert testimony be based on "sufficient facts or data." In determining admissibility of expert testimony, the "test . . . is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology." *In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999) (internal quotations omitted). Nevertheless, "the court must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *Id.* at 665-66. "A court may conclude there is simply too great a gap between the data and the opinion proffered." *Id.* at 666. Such a conclusion is warranted with regards to Mr. Paulsen's opinions on careless smoking.

The Defendant's expert report, prepared and signed by Mr. Paulsen, indicates that "the origin [of the fire], based on fire patterns, available fuel, and available ignition source, was the junction box" located on an outside wall of the Dautenhahn Home. (D.I. 81-2, p. 7). Notably absent from the report is any mention of careless smoking as a potential cause of the fire. When questioned at his deposition, Mr. Paulsen conceded that, based on the fire and the available evidence, he could not come up with a scenario where careless smoking caused this fire. (D.I. 81-3, p. 19). Indeed, Mr. Paulsen admitted "there's no evidence that [smoking] could be a

---

[2] As I understand it, Plaintiffs simply don't want Mr. Paulsen to say that, in his expert opinion, careless smoking cannot be ruled out as a cause of this fire. I think his statements are meant to imply that it could be a cause of the fire, although Mr. Paulsen has not said that.

4

cause" of the fire. (*Id.*). Certainly, a fire can have many different causes[3], but Mr. Paulsen, as an expert, can only testify to those causes that have a valid basis in fact and the scientific process. Based on the fact that the area of the fire's origin is undisputed, that no cigarettes were found in or near that area, that smoking was not considered in Mr. Paulsen's expert report, and that Mr. Paulsen could not come up with a single scenario which would connect careless smoking to the fire at the Dautenhahn Home, to allow Mr. Paulsen to opine as an expert that smoking could be a cause of this fire would be to permit too great a leap between the data and his expert opinion.

### B. The Parties' Arguments Regarding Expert Opinions on Potential Causes of Electrical Failure

Both parties have submitted motions attempting to limit opposing expert testimony on potential causes of a glowing connection at the Dautenhahn Home. Plaintiffs' motion seeks to limit Mr. Kilgore's opinion that, besides the negligence of the Defendant, there are five potential scenarios that could have caused a glowing connection in the junction box. Defendants' motion seeks to limit Mr. Sudler's opinion that the glowing connection in the junction box was caused by the Defendant's failure to make a tight electrical connection. The shared foundation of both parties' arguments is essentially that expert opinion testimony on the various potential causes of a glowing connection is speculative. Since the same reasoning is dispositive of both motions, I will address them together.

Defendant's expert, Mr. Kilgore, indicates that there are five scenarios that could have caused a glowing connection in the junction box at the Dautenhahn Home. These scenarios are as follows:

(1) A displacement of the inner cables by strain;

(2) the presence of a salt laden atmosphere;

---

[3] Some of which include careless fireworks displays, chemistry experiments gone wrong, and alien invasions.

5

(3) the presence of a crushing load on the inner cables;

(4) the absence of a mechanical bond of the inner wires; and

(5) other traumatic events beyond the control of the installing electrician.

(D.I. 82, p. 6). Beyond the evidence that a glowing connection occurred, Plaintiffs point out that Mr. Kilgore cannot point to any evidence that supports any of his five explanations for that glowing connection. (D.I. 77, pp. 7-13). Plaintiffs argue that Mr. Kilgore's proffered causes "must be excluded because [they are] based on pure speculation, with no foundation whatsoever." (*Id.* at p. 5).

Plaintiffs' expert, Mr. Sudler, concludes that a glowing connection, caused by Defendant's failure to exercise reasonable skill and care, caused the fire at the Dautenhahn Home. Defendant challenges Mr. Sudler's conclusion because "he cannot say within a reasonable degree of professional certainty that Royal Plus made a loose connection at the time of installation." (D.I. 79, p. 2). Defendant insists that "the vital question that Mr. Sudler needs to be able to answer for a jury is this – is it more likely than not that Royal Plus made a loose connection?" and that "[b]y his own admission, Mr. Sudler does not know the answer to that question." (*Id.* at p. 3). Defendant's assertions are incorrect. To cross the threshold for admissibility, Mr. Sudler's opinion need not be that it is more likely than not Royal Plus made a loose connection, nor must Mr. Sudler conclude with a reasonable degree of professional certainty that Royal Plus made a loose connection. *Daubert* and its progeny make clear that Mr. Sudler's opinion need only be reliable, qualified, and fit the underlying facts in order to be admissible.

Defendant is correct in asserting that Plaintiffs are attempting to use the lack of evidence in this case as a sword and a shield, but the Defendant is guilty of the same. Unlike Mr.

6

Paulsen's opinion regarding careless smoking, both parties' experts have sufficient underlying facts and data to opine on what may have caused a glowing connection at the Dautenhahn Home. There is at least a baseline of evidence available to indicate that the fire was caused by an electrical problem with the junction box. As Plaintiffs' causation expert[4] points out, "there was evidence of an electrical failure on the west exterior garage wall. There were small pieces of electrical copper wiring and copper splatter observed, as well as arcing that was noted on the branch circuit wiring." (D.I. 77, p. 6). It follows, then, that the parties' experts could conclude that a glowing connection was a source of this electrical failure. When, as here, there is no evidence to indicate one way or another how that glowing connection may have occurred, expert opinion testimony will always be, to some degree, speculative. We rely, then, on the informed, qualified expert to draw a conclusion based on experience. It is for the jury to hear opinions on that cause, afford appropriate weight to those opinions, and to decide the actual cause of the fire.

### C. Plaintiffs' Argument Regarding Mr. Kilgore's Qualifications

Plaintiffs argue that "Mr. Kilgore is completely unqualified to testify as to the potential causes of the fire at the Dautenhahn home." (*Id.* at p. 14). Mr. Kilgore is licensed as a professional engineer in New York, Georgia, Texas, Maryland, Pennsylvania, and Virginia. (D.I. 77-1, p. 23). Plaintiffs insist that Mr. Kilgore is not an expert in forensic electrical engineering, is not an electrical engineer, and has never before offered an opinion with regards to electrical engineering or electrical failure. (D.I. 77, p. 14). Plaintiffs note that "Mr. Kilgore's electrical experience is limited to installation and his experience as an electrical contractor." (*Id.* pp. 14-15). That experience is vast—Mr. Kilgore testified at his deposition that, by his estimate, he has installed electric in a thousand different homes. (D.I. 77-1, p. 24). Mr. Kilgore also indicated that he had installed wires like the ones at issue in this case "many times." (D.I. 77-1,

---

[4] The conclusions and qualifications of Plaintiffs' causation expert, Bernie Adamson, are not in dispute.

7

p. 25). The test for expert testimony imposed by *Daubert* is a flexible one, and it contemplates that an expert can provide a valid opinion either from practical experience or scientific application alone, or some combination of the two. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150-51 (1999). Here, I find Mr. Kilgore is more than qualified to offer an opinion on potential causes of a glowing wire.

Thus, for the reasons discussed above, Plaintiffs' Motion in Limine to Bar or Limit the Expert Testimony of Gregory J. Paulsen is **GRANTED**, Plaintiffs' Motion in Limine to Bar the Testimony of Defendant's Expert Mark L. Kilgore is **DENIED**, and Defendant's Motion in Limine to Limit the Testimony of Plaintiffs' Liability Expert Samuel Sudler is **DENIED**.

Entered this 25th day of November, 2014.

*Richard G. Andrews*
United States District Judge